## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## <u>JACKSONVILLE DIVISION</u>

In re:

**CHARLES ALBERT MARELL and
CAROLYN N. MARELL,**

     Debtors.

_____/

**GORDON P. JONES, IN HIS CAPACITY
AS CHAPTER 7 TRUSTEE,**

     Plaintiff,

v.

**HILVANIM GROUP, INC., a California
corporation, formerly known as
CENTERDON GROUP, INC.,**

     Defendant.

_____/

**CASE NO. 18-01928-JAF**

**CHAPTER 7**

Adv. No. 3:19-ap-_____-JAF

### <u>COMPLAINT</u>

Now comes Plaintiff, Gordon P. Jones, as Chapter 7 Trustee ("Plaintiff"), by and through

his undersigned counsel, and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure,

and hereby sues Defendant, Hilvanim Group, Inc., a California corporation, formerly known as

Centerdon Group, Inc. ("Defendant"), and states, avers and alleges as follows:

### <u>JURISDICTION AND VENUE</u>

1.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.     This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C.

§ 1334.

3.     Venue in this Court is proper pursuant to the provisions of 28 U.S.C. § 1409.

4.      Upon Plaintiff's information and belief, Defendant is a California corporation with its principal place of business at 1800 Century Park East #600, Los Angeles, California 90067.

5.      Upon Plaintiff's information and belief, the Registered Agent for Defendant is Hector Carreon, 20101 East Valley Boulevard #A, Walnut, California 91789.

6.      Plaintiff is the duly appointed, qualified and acting Trustee in the matter captioned *In re Charles Albert Marrell and Carolyn N. Marrell*, Case No. 3:18-bk-1928-JAF, which case is pending in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division (the "Bankruptcy Case").

7.      Plaintiff perfects service on Defendant pursuant to the provisions of Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure.

## FACTS COMMON TO ALL ALLEGATIONS

8.      On June 7, 2018 (the "Petition Date"), the Debtors, Charles Albert Marrell and Carolyn N. Marrell (the "Debtors") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

9.      Plaintiff was subsequently appointed as the Chapter 7 Trustee of Debtors' Bankruptcy Case.

10.      Prior to the Petition Date, on or about June 30, 2017, the Debtors entered into a Legal Services Agreement (the "Contract") with Defendant. A redacted copy of the Contract is attached hereto as **Exhibit "A"**.

11.      As provided for in the Contract, Defendant agreed to provide legal services to Debtors in the form of "debt reduction via resolution of unsecured indebtedness". Contract, ¶ 2(b).

2

12.    Per the terms of the Contract, the Debtors were required to pay a "set-up fee of $190.00 to cover out-of-pocket third party charges for a face-to-face meeting with client and program setup" (the "Start-Up Fee").  Contract, ¶ 6(a).

13.    Per the terms of the Contract, the Debtors were also required to pay $1,275.00 per month (the "Monthly Payment") for a total of 24 months to fund a settlement of the Debtors' unsecured debts.  Contract, ¶ 6(a).

14.    The Monthly Payments were also utilized to pay Defendant its legal fees, reimbursement of costs and expenses, a monthly maintenance fee of $79 and a client trust savings account.  *Id.* at 6(a), (b) and (e).

15.    Beginning on or about June 30, 2017 and continuing each monthly thereafter through April 30, 2018, the Debtors made their Monthly Payments to Defendant in the total amount of $14,215.00 (and together with the Start-Up Fee, the "Total Payments").

16.    The Total Payments were made in the amount of $14,405.00 and were automatically withdrawn from the Debtors' bank account on a monthly basis.

17.    At the Debtors' § 341 Meeting of Creditors, the Debtors testified under oath and under penalty of perjury that Defendant did not settle any of their unsecured debts, nor did Defendant perform any other services on behalf of the Debtors or refund any amounts paid to Defendant by the Debtors.

18.    At all relevant times, the Debtors were insolvent.

19.    Specifically, Debtors indicated on their Schedule A/B that their non-exempt assets totaled approximately $21,418.89, while their liabilities totaled no less than $67,399.73

20.    Upon Plaintiff's information and belief, Defendant is a "credit counseling agency" as that term is defined in Fla. Stat. § 817.801(1).

21.    Defendant provided "credit counseling services" to the Debtors as that term is defined in Fla. Stat. § 817.801(2).

22.    Defendant provided "debt management services" to the Debtors as that term is defined in Fla. Stat. § 817.801(4)(a)-(b).

23.    In exchange for the debt management services provided by Defendant to the Debtors, and in violation of Fla. Stat. § 817.802(1), Defendant has charged and accepted fees from the Debtors in an amount greater than allowed by law for both the set-up fee and for debt management services.

24.    As a result of its violation of Fla. Stat. Chapter 817, Defendant has committed unfair or deceptive trade practices as provided under Fla. Stat. Chapter 501.

25.    Therefore, pursuant to Fla. Stat. § 817.806 and Fla. Stat. Chapter 501, the Debtors held causes of action against the Defendant as of the Petition Date, including but not limited to actual damages, attorneys' fees and costs (the "Causes of Action").

26.    Upon the filing of the Bankruptcy Case, the Causes of Action became property of the bankruptcy estate pursuant to 11 U.S.C. § 541 for which the Trustee could use, sell or lease pursuant to 11 U.S.C. § 363.

27.    This action is brought within the applicable statute of limitations provided in Fla. Stat. § 95.11.

28.    In the alternative, the Trustee seeks the avoidance and recovery of the Monthly Payments as a fraudulent transfer pursuant to the provisions of 11 U.S.C. §§ 548 and 550, and a declaratory judgment finding that the Defendant has violated Florida's Unfair and Deceptive Trade Practices Act and an award of damages for violation of same.

## COUNT I

### (Violation of Fla. Stat. § 817.802)

29.     Plaintiff hereby incorporates by reference paragraphs 1 through 28 above as if fully

rewritten and restated at length herein.

30.     Fla. Stat. § 817.802 provides:

> It is unlawful for any person, while engaging in debt management
> services or credit counseling services, to charge or accept from a
> debtor residing in this state, directly or indirectly, a fee or
> contribution greater than $50 for the initial setup or initial
> consultation. Subsequently, the person may not charge or accept a
> fee or contribution from a debtor residing in this state greater than
> $120 per year for additional consultations or, alternatively, if debt
> management services as defined in s. 817.801(4)(b) are provided,
> the person may charge the greater of 7.5 percent of the amount paid
> monthly by the debtor to the person or $35 per month.

31.     On or about June 30, 2017, the Debtors entered into the Contract with Defendant.

32.     Pursuant to the Contract, the Debtors submitted Monthly Payments to Defendant,

each in the amount of $1,275.00.

33.     The Debtors also paid to Defendant the Set-Up Fee in the amount of $190.00.

34.     In violation of Fla. Stat. § 817.802(1), Defendant retained some or all of the Total

Payments paid by Debtors as compensation for credit counseling services and/or debt management

services, as those terms are defined in Fla. Stat. § 817.801.

35.     Pursuant to Fla. Stat. § 817.806, Plaintiff is entitled to actual damages for any

amount of compensation paid to Defendant in excess of the statutorily prescribed amount, plus

reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully demands that judgment be entered against Defendant

(i) awarding damages to Plaintiff in an amount to be determined plus statutory interest, (ii)

awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred

in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT II

### (Declaratory Judgment)

36.    Plaintiff hereby incorporates by reference paragraphs 1 through 28 and paragraphs 30 through 35 above as if fully rewritten and restated at length herein.

37.    There exists a real, actual and concrete controversy between the Trustee and Defendant as to whether Defendant committed acts which constitute a violation of Florida's Unfair and Deceptive Trade Practices Act, codified at Fla. Stat. § 501.201, *et seq.*

38.    Pursuant to Fla. Stat. § 816.806, "any person who violates any provision of [Fla. Stat. §817.801, et seq.] commits an unfair or deceptive trade practice as defined in part II of chapter 501."

39.    As set forth above, Defendant collected fees from the Debtor in excess of those legally allowed pursuant to Fla. Stat. § 817.802.

40.    Pursuant to Fla. Stat. § 501.211, the Trustee is entitled to Declaratory Judgment finding the fees collected by Defendant are a violation of Florida's Unfair and Deceptive Trade Practices Act codified at Fla. Stat. § 501.201, *et seq.* and Fla. Stat. § 817.806.

WHEREFORE, Plaintiff respectfully demands that judgment be entered against Defendant (i) finding that Defendant's practices violated Florida's Unfair and Deceptive Trade Practices Act codified at Fla. Stat. § 501.201, *et seq.* and Fla. Stat. § 817.806, (ii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this

adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT III

### (Damages pursuant to Fla. Stat. § 501.211)

41.    Plaintiff hereby incorporates by reference paragraphs 1 through 28, paragraphs 30 through 35 and paragraphs 37 through 40 above as if fully rewritten and restated at length herein.

42.    Fla. Stat. § 501.211 provides in relevant part, "[in] any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

43.    Fla. Stat. § 501.2105 provides that "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."

44.    As set forth above, the Debtor was charged $14,405.00 in excessive fees.

45.    The Debtors did not receive a refund of any of the Total Payments, despite little to no services being rendered to Debtors by Defendant.

46.    The Trustee is entitled to judgment equal to such amount, plus his reasonable attorneys' fees and costs for prosecuting this action.

WHEREFORE, Plaintiff respectfully demands that judgment be entered against Defendant (i) awarding damages to Plaintiff in an amount no less than the Total Payments plus statutory interest, (ii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT IV

### (Damages pursuant to Fla. Stat. § 501.211)

47.    Plaintiff hereby incorporates by reference paragraphs 1 through 28, paragraphs 30 through 35, paragraphs 37 through 40 and paragraphs 42 through 46 above as if fully rewritten and restated at length herein.

48.    Fla. Stat. § 817.806 provides in relevant part:  "Any person who violates any provision of this part commits an unfair or deceptive trade practice as defined in part II of chapter 501. Violators shall be subject to the penalties and remedies provided therein. Further, any consumer injured by a violation of this part may bring an action for recovery of damages. Judgment shall be entered for actual damages, but in no case less than the amount paid by the consumer to the credit counseling agency, plus reasonable attorney's fees and costs."

49.    As set forth above, the Debtor was charged $14,405.00 in excessive fees.

50.    The Debtors did not receive a refund of any of the Total Payments, despite little to no services being rendered to Debtors by Defendant.

51.    The Trustee is entitled to judgment equal to the Total Payments, plus his reasonable attorneys' fees and costs for prosecuting this action.

WHEREFORE, Plaintiff respectfully demands that judgment be entered against Defendant (i) awarding damages to Plaintiff in an amount no less than the Total Payments plus statutory interest, (ii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT V

### (Unjust Enrichment)

52.    Plaintiff hereby incorporates by reference paragraphs 1 through 28, paragraphs 30 through 35, paragraphs 37 through 40, paragraphs 42 through 46 and paragraphs 48 through 51 above as if fully rewritten and restated at length herein.

53.    To the extent Plaintiff is not entitled to recovery of the funds under other Counts of this Complaint, he lacks an adequate remedy at law.

54.    The Debtor conferred a benefit upon the Defendant, *to wit*, Total Payments totaling $14,405.00.

55.    The Defendant appreciated such benefit by receiving the Total Payments and retaining same despite failing to settle any of the Debtor's unsecured debts.

56.    Under circumstances, it is inequitable for Defendant to retain the benefit without paying the value to the estate.

WHEREFORE, Plaintiff respectfully demands that judgment be entered against Defendant (i) awarding to Plaintiff an amount no less than $14,405.00, (ii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT VI

### (Avoidance of Fraudulent Transfer
### Against Defendant Pursuant to 11 U.S.C. § 548(a)(1)(A))

57.     Plaintiff hereby incorporates by reference paragraphs 1 through 28, paragraphs 30 through 35, paragraphs 37 through 40, paragraphs 42 through 46, paragraphs 48 through 51 and paragraphs 53 through 56 above as if fully rewritten and restated at length herein.

58.     Debtors, with actual intent to hinder, delay, or defraud creditors of the estate, transferred the Total payments for the benefit of Defendant in order to place such assets outside the reach of Debtors' creditors.

59.     There exists the following common circumstantial indicia of fraudulent intent that, when taken together, indicate the existence of actual fraud:

(i)     The Total Payments comprised substantially all of the Debtors' non-exempt property or equity in such property;

(ii)    Debtors were insolvent and/or had or other unmanageable indebtedness at during the course of making the Total Payments;

(iii)   There was an absence of consideration and the Debtors and Defendant knew or should have known that Debtors' outstanding creditors would not be paid; and

(iv)    There was no consideration for the transfer of the Total Payments or there existed a vast disparity in value between the Total Payments transferred and the consideration received.

WHEREFORE, Plaintiff respectfully requests entry of a judgment (i) declaring the transfer of the Total Payments to be void as a matter of law, (ii) ordering the Defendant to surrender the Total Payments to Plaintiff, (iii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and (iv) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT VII

### (Avoidance of Fraudulent Transfer Against
### Defendant Pursuant to 11 U.S.C. § 548(a)(1)(B))

60.     Plaintiff hereby incorporates by reference paragraphs 1 through 28, paragraphs 30 through 35, paragraphs 37 through 40, paragraphs 42 through 46, paragraphs 48 through 51, paragraphs 53 through 56 and paragraphs 57 through 59 above as if fully rewritten and restated at length herein.

61.     The Debtors received less than reasonably equivalent value from Defendant at the time Debtors transferred the Total Payments to Defendant.

62.     The Debtors:

(i)     Were insolvent when the transfer of the Total Payments was made, or became insolvent as a result of such transfers or obligations;

(ii)    Were engaged in business or a transaction or were about to engage in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; and/or

(iii)   Intended to incur, or believed that they would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

WHEREFORE, Plaintiff respectfully requests entry of a judgment (i) declaring the transfer of the Total payments to be void as a matter of law, (ii) ordering the Defendant to surrender the Total Payments to Plaintiff, (iii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and (iv) awarding Plaintiff any such further relief as may be deemed appropriate.

## COUNT VIII

**(Recovery of the Value of the Property Transferred Pursuant to 11 U.S.C. § 550)**

63.     Plaintiff hereby incorporates by reference paragraphs 1 through 28, paragraphs 30 through 35, paragraphs 37 through 40, paragraphs 42 through 46, paragraphs 48 through 51, paragraphs 53 through 56, paragraphs 57 through 59 and paragraphs 61 through 62 above as if fully rewritten and restated at length herein.

64.     Eleven U.S.C. § 550 provides that the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property so transferred.

65.     To the extent the Court finds that the transfer of the Total Payments from Debtors to Defendant are voidable pursuant to 11 U.S.C. § 548, the Trustee seeks judgment against Defendant in an amount of no less than $14,405.00, or such other amount to be proven at trial in this matter.

WHEREFORE, Plaintiff respectfully demands that judgment be entered against Defendant (i) in an amount of the value of any funds transferred to it, in an amount to be proven at trial, on account of the Total Payments, (ii) awarding Plaintiff his reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further

bankruptcy proceedings in the event he is the prevailing party in this adversary proceeding, and

(iii) awarding Plaintiff any such further relief as may be deemed appropriate.

Respectfully submitted,

**JOHNSON LAW FIRM, P.A.**

/s/ Eugene H. Johnson

Eugene H. Johnson, Esq.
Florida Bar No. 0032105
Lauren W. Box, Esq.
Florida Bar No. 0106242
100 North Laura Street, Suite 701
Jacksonville, Florida 32202
(904) 652-2400 Telephone
(904) 652-2401 Facsimile
ehj@johnsonlawpa.com
lauren@johnsonlawpa.com

*Attorneys for Plaintiff,*
*Gordon P. Jones, Chapter 7 Trustee*

Exhibit "A"

# CENTERDON GROUP, INC.

## Client Information

| Client Name | Charlie Marell | | | |
|---|---|---|---|---|
| Current Address | 11242 CloverHill Circle West | | | |
| City | Jacksonville | State | FL | Zip Code: | 32257 |
| Home Phone: | | | Cell Phone: | |
| Email: | | | Date of Birth | '1942 |
| Occupation: | Realestate Apprasell | | Social Security #: | 5707 |
| Work Phone: | | | Fax Number: | |

| Client Name | Carolyn Marell | | | |
|---|---|---|---|---|
| Current Address | 11242 CloverHill Circle West | | | |
| City | Jacksonville | State | FL | Zip Code: | 32257 |
| Home Phone: | | | Cell Phone: | |
| Email: | | | Date of Birth | '1946 |
| Occupation: | Assistant Apprassell | | Social Security #: | ·6659 |
| Work Phone: | | | Fax Number: | |

## Financial Information

**Net Income**

| | | | |
|---|---|---|---|
| Monthly Household | 3275 | Excess Income | 222 |
| Alimony | | | |
| Child Support | | | |
| Total Net Income | 3275 | | |

**Expenses**

| | |
|---|---|
| Rent or House | |
| Vehicle | |
| Monthly Insurance | 200 |
| Telephone | 200 |
| Electric / Gas / Water | 250 |
| Food | 520 |
| Medical | 100 |
| Child Care / School | |
| Internet / Cable | 200 |
| Other | 108 |
| Transportation / Gas | 200 |
| Continuing Credit Cards | |
| Entertainment | |
| Clothing | |
| Program Fee | 1275 |
| Total Expense | 3053 |

225414
Marilyn Dinkins

# CENTERDON GROUP, INC.

*Los Angeles, CA 90067*

## Creditor Worksheet

| Client Name | Charlie Marell | SSN | _____ |
|---|---|---|---|
| Client Name | Carolyn Marell | SSN | |

| CREDITOR NAME | ACCOUNT NUMBER | TYPE | BALANCE |
|---|---|---|---|
| SEARS MASTERCARD | -2807 | CREDIT | $ 11,125.00 |
| CHASE VISA | -2983 | CREDIT | $ 10,296.00 |
| DISCOVER | -4274 | CREDIT | $ 12,440.00 |
| AMERICAN EXPRESS | 1007 | CREDIT | $ 13,956.00 |

**Total: $ 47,817.00**

225414
Marilyn Dinkins

CENTERDON GROUP, INC. V1

## Client Authorization

I/we _____ Charlie Marell _____ / _____ Carolyn Marell _____ , hereby
acknowledge that I/we have retained CENTERDON GROUP, INC. ("LAW FIRM") as our attorney
in order to resolve the outstanding indebtedness I/we owe to certain creditors. I/we hereby authorize
our creditors to discuss my/our account with representatives of LAW FIRM for all purposes
necessary to resolve the amount owing to each such creditor.

_____     _____

Charlie Marell                                          **Date**

_____     _____

Carolyn Marell                                         **Date**

# Client Debt Authorization

| | | | |
|---|---|---|---|
| Client Name | Charlie Marell | SSN | 5707 |
| Client Name | Carolyn Marell | SSN | -6659 |

| | | | |
|---|---|---|---|
| First Payment Date: | 6/30/2017 | First Payment Amount: | $ 1,275.00 |
| Recurring Payment Day: | 5 | Recurring Pay Amount: | 1,275.00 |

**The setup fee of $190 shall be charged on:** 6/30/2017

**I authorized CENTERDON GROUP, INC. to debit my:**

## Checking Account

| PLEASE PLACE VOIDED CHECK HERE |
|---|
| |

| | |
|---|---|
| Bank Routing Number | |
| Bank Account Number | |
| Bank Name | |

_____     _____
Charlie Marell                                  Date


_____     _____
Carolyn Marell                                  Date

225414
Marilyn Dinkins

# CENTERDON GROUP, INC.

## LEGAL SERVICES AGREEMENT

This Agreement is made by and between the CENTERDON GROUP, INC. a Debt Relief Agency, ("Law Firm"), and the undersigned Assisted Person(s) or debtor(s) (hereinafter "Client(s)").

1. **CONDITIONS.** This Agreement shall take effect only when Client signs and returns this Agreement, initials each page to signify it having been read, and completes a meeting with Law Firm.

2. **SCOPE OF SERVICES**

    a.  Client is engaging Law Firm for one or more of the following legal services: (1) analysis of Client's eligibility for different forms of debt relief; (2) evaluation of debt relief options to include consideration of: (a) debt restructure, (b) debt reduction, (c) debt elimination or restructure to include bankruptcy under Chapter 7, 13, or 11, (d) debt elimination through informal financial reorganization, (e) resolution of litigation; (f) debt renegotiation and settlement, (g) debt consolidation, (h) removal of an involuntary lien against real estate, (i) credit counseling, (j) restructuring of secured obligations to include the elimination or restructuring of certain second mortgages and automobile loans (requires Chapter 13 bankruptcy), (k) Student Loan Restructure, (l) reduction or elimination of federal or state income taxes; (3) answering or opposing a civil complaint, (4) preparing or opposing a motion, (5) vacating or eliminating a judgment, (6) preparation or review of reaffirmation agreements, (7) bankruptcy amendment, (8) preparation, answer, or opposition to an Adversary Complaint, or other services to be negotiated.

    b.  Based upon an analysis of Client's eligibility for different forms of debt relief and an evaluation of debt relief options, Law Firm and Client have agreed that the following debt relief option(s), is(are) to be implemented (check those that apply):

        _X_ Debt reduction via resolution of unsecured indebtedness
        ___ Debt restructure of unsecured indebtedness
        ___ Debt consolidation of unsecured indebtedness
        ___ Bankruptcy
        ___ Informal Financial Reorganization
        ___ Resolution of Litigation
        ___ Answer or opposition to civil complaint or adversary complaint
        ___ Debt renegotiation
        ___ Removal of an Involuntary Lien against Real Estate
        ___ Restructuring or Elimination of Second Mortgage
        ___ Restructuring or Elimination of automobile loan
        ___ Credit Counseling
        ___ Student Loan Restructure
        ___ Reduction or Elimination of Federal or State Income Taxes
        ___ Preparation or Opposition to a Motion
        ___ Vacation/Elimination of Judgment
        ___ Reaffirmation Agreement
        ___ Bankruptcy Amendment
        ___ Preparation of Adversary Complaint
        ___ Other: _____

    c.  Client has chosen the debt relief option for the reduction of unsecured indebtedness. Debtor must have a financial hardship, be able to make regular monthly payments

225414
Marilyn Dinkins

HAVING READ
INITIAL HERE

CENTERDON GROUP, INC.

necessary to participate in the Program, fund settlement and pay Program expenses, have no intent to defraud any creditor, and the Law Firm and its associated state attorney, if applicable, must believe participation will provide benefits to client(s). Implementation of this debt relief option involves the Law Firm's negotiating the settlement of those unsecured debts that have been included within the scope of Law Firm's representation or other legal means to resolve client's debts. Law Firm will contact the unsecured creditors included in this representation, in writing and/or by telephone or fax as Law Firm deems appropriate, to advise them of Law Firm's representation. Client acknowledges that despite Law Firm's contact of Client's creditors, creditors may deny said contact. Client(s) understand that participation in the Program is rigorous and requires discipline, sacrifice and Client(s) agree to exercise discipline and sacrifice. Client(s) unwillingness to control expenses could result in Client(s) failing the Program. Client(s) acknowledge that neither the Law Firm nor any of its representatives or associates has instructed Client(s) to stop paying any creditor and THE DECISION TO CEASE PAYING ANY CREDITOR OR COLLECTOR IS CLIENT(S) ALONE.

d.  Law Firm is representing Client and all communications related to the debt(s) in question should be directed to Law Firm or its designee. Client acknowledges all calls may be monitored and recorded. Law Firm and Client acknowledge and agree that no legal services other than that specifically described in this Agreement are included in this representation and that any additional legal services requested by Client will be provided under a separate agreement or amendment to this Agreement signed by Client which may require payment of an additional fee. Client acknowledges that the attorneys that comprise Law Firm are licensed in California and certain legal services rendered by Law Firm in other states may involve the association of attorneys licensed in those states.

e.  Law Firm will use its best efforts to obtain the greatest reduction possible of each creditor's claim. Law Firm reserves the right to remove any of Client's accounts from this representation. Law Firm at its option may refund any fees received in connection with any account so removed.

f.  Upon Client's written request, Law Firm will provide a statement to Client that reflects the current balance of all funds held in trust for Client as well as all monies deposited by client and/or paid on Client's behalf.

g.  Law Firm will use its best efforts to respond to and prevent creditors from unlawfully contacting or harassing Client. Client acknowledges that Law Firm cannot guarantee that certain creditors will stop collection efforts or harassment of Client, or that creditors will discontinue charging late fees, interest, or stop increasing the amount of Client's debt. In the event of unlawful harassment by a creditor, Law Firm may, but is not required to, recommend a course of action to Client, including but not limited to, assisting Client in locating an attorney licensed to practice law in the appropriate jurisdiction to address creditor's concerns.

3.  **LAW FIRM'S OBLIGATIONS.** Law Firm shall competently perform the legal services described above and otherwise required under this Agreement, promptly respond to Client's inquiries regarding their matter and will take steps to keep Client reasonably informed as to the progress of their matter.

225414
Marilyn Dinkins

HAVING READ
INITIAL HERE

# CENTERDON GROUP, INC.

4. **CLIENT'S OBLIGATIONS**

    a.     Client agrees to cooperate with Law Firm and promptly provide accurate and truthful information regarding their accounts, debts, income, employment, assets, and any other information reasonably required by Law Firm in connection with this representation. Client agrees to update Law Firm with any changes to their address, telephone number, email address, and employment status.

    b.     Client agrees to pay the agreed upon MINIMUM MONTHLY PAYMENT AMOUNT set forth herein as this is critical to Law Firm's ability to negotiate a reduction of Client's debts.

    c.     Client agrees to supply Law Firm with copies of the statements of each creditor enrolled in the Program within sixty (60) days after entering the Program.

    d.     Client may cancel this program within five (5) days of the execution of this Agreement and receive a refund for any amounts paid during that time; thereafter, there are no refunds.

    e.     Client agrees to confirm the accuracy of information provided to Law Firm. Client acknowledges that Law Firm may need to make adjustments and/or corrections in the information provided by Client which may result in a recalculation of fees.

    f.     Prior to executing this Agreement, Client has evaluated and rejected alternatives to this Program such as credit counseling, making minimum payments, debt consolidation, and bankruptcy.

    g.     Client agrees to provide a copy of summons, complaints, and other legal communications to Law Firm immediately but not later than seven (7) days from their delivery to Client. Client acknowledges that Law Firm does not represent Client on any litigation unless specifically engaged for that purpose along with payment of a separate retainer fee.

    h.     Client represents it has sufficient monthly recurring income to comply with this Agreement.

5. **DEBT REDUCTION PROCESS**

    a.     Client acknowledges that, while Law Firm will use its best efforts to try and secure a substantial reduction of client's debts included in this representation, Law Firm cannot guarantee a specific outcome, the term of this Agreement, or that a specific percentage of Client's debts will be eliminated, or that debt balances will not increase. No guarantees of any kind can be made or has been made regarding the outcome or likely outcome of the representation undertaken. Any information provided such as the estimated monthly payment, the length of time needed to complete the Program, and the estimated resolution with any creditor is only an estimate and actual results may vary. Law Firm cannot guarantee that creditors will not initiate litigation and garnish Client's wages and/or seize other Client assets. Law Firm cannot guarantee that creditors will not increase the annual percentage rate on delinquent accounts. Creditors may continue to accrue interest and impose penalties as a result of delinquent payments.  Client may be liable for federal and state taxes on the amount their debt is

225414
Marilyn Dinkins

HAVING READ
INITIAL HERE

CENTERDON GROUP, INC.

Reduced. Client agrees to hold Law Firm harmless as a result of any actions, legal or otherwise, instituted by creditors. Law Firm's services as set out herein are not suitable for everyone and Client represents they have considered alternatives to the herein program.

b.　　If a creditor files suit against Client, Client agrees to provide Law Firm with a copy of the lawsuit within 7 days. Thereafter Law Firm will make recommendations to client for the resolution of said creditor suit. No representation is provided for any litigation unless the Law Firm is specifically engaged for that purpose.

c.　　Client authorizes Law Firm to take appropriate and legal actions as Law Firm deems necessary to settle Client's accounts included in this representation, including without limitation, discussing with creditors matters pertaining to Client's debts, income, employment, overall financial situation and other factors that may affect Client's ability to fully pay their debts. Law Firm may communicate with Client and their creditors by telephone, facsimile, email, regular mail, and overnight mail. Client acknowledges that, despite Law Firm's notification of Client's creditors of its representation, said creditors may deny such notification.

d.　　Client acknowledges that their credit rating may be reduced while in the debt reduction program.

e.　　Client(s) understand that enrollment and participation in the Program does not prevent a creditor, an assignee of a creditor, a successor or agent of a creditor from suing Client(s).

f.　　Clients understand that, despite notification of Law Firm's notification to creditors that Client(s) are represented, creditors may violate various laws and continue to call Client(s). If this occurs, the Law Firm will send cease and desist letters and advise Client(s) of additional options available to Client(s).

g.　　Client authorizes Law Firm, at Client's direction, to receive all billing statements at its mailing address indicated herein and not its email address on accounts made a part of this representation and will notify and/or authorizes Law Firm to notify creditors that such billing statements can be sent to an address provided by Law Firm. Client acknowledges that non-payment of their minimum monthly payment and/or other obligations to creditors may result in an increase in the amount owed by Client to creditors to include late fees, over limit fees, continued interest and other fees, and may involve further collection efforts including lawsuits. Client acknowledges that resolution of creditor amounts by Law Firm is dependent upon Client's accumulation of sufficient savings amounts to enable resolution and compliance with the terms and conditions of this Agreement.

h.　　THE TIME REQUIRED to achieve the desired results is dependent on when Client accumulates sufficient savings amounts to enable resolution of creditor balances. Client payments will be allocated to Law Firm's fees and Client's savings account as further described in Section 6 herein. Resolution will occur sequentially as Client accumulates savings needed to enable resolution. The accumulation of savings is dependent upon a number of factors such as the amount of Client's monthly payment and the term of this Agreement; generally, a higher the monthly payment and shorter term will produce savings at a faster rate.  Based on the monthly payment and term

HAVING READ
INITIAL HERE

225414
Marilyn Dinkins

CENTERDON GROUP, INC. V1                                                        Page 8 of 17

chosen by Client, the estimated time to achieve the desired results to enable resolution of Client's debts is equal to the term set forth in Section 7(a) herein. Law Firm will resolve Client's debts in an order determined in its discretion based on available Client savings at any given time. Client acknowledges that the resolution process may continue after the end of the program's term. Client agrees to extend the original estimated term if necessary to enable resolution of all enrolled debts.

i.  **THE AMOUNT OF CLIENT SAVINGS TO ENABLE RESOLUTION** of all balances included for resolution is estimated at $28,690.20____.  The estimated time required to resolve all enrolled debts is _24_ months. The savings amount needed for resolution of any particular debt is generally estimated at 50% of the creditor balance at time of resolution. Client acknowledges that any debts enrolled that represent judgments may require resolution at a higher percentage which may result in a longer term. Resolution amounts are estimates only and Law Firm cannot guarantee such amount which may be less, the same, or higher than this estimate. Law Firm may be able to resolve certain balances on a case-by-case basis for some but not all of the creditors which Client has included in this Agreement. Resolutions include any payment arrangements on lawsuits which may arise after Client engages law firm. Creditor balances pertaining to pre-existing lawsuits are not eligible for inclusion in the Program except with a separate Legal Services Agreement. Client acknowledges that any debts involving litigation may require resolution at an amount significantly greater than 50%.

j.  Client acknowledges that the shorter the duration of a debt reduction plan, the greater the likelihood that the plan will be successfully implemented, and, further, that debt reduction plans in excess of 36 months will be permitted only if the Client represents they will be able to contribute additional sums in the future. Client acknowledges that any debts enrolled that represent judgments may require resolution at an amount significantly greater than 50%.

k.  Client authorizes Law Firm to resolve those debts included in this Agreement at the rate of 50% or less without Client's prior approval. Resolution payments shall be made in a manner determined by Law Firm and Client's Creditors.

l.  If Law Firm deems it necessary, Client agrees to sign a Power of Attorney authorizing their creditors to discuss Client's accounts with Law Firm for the purpose of negotiating a resolution of such accounts.

m.  Client may cancel this Agreement within five (5) days of this contract becoming effective. All legal fees paid during that period are fully refundable. If cancellation or termination is effective beyond the first five (5) days, no refunds will be issued except for the amounts, if any, in Client's trust account.

n.  Client(s) understand that if a default on any obligation or poor credit scores occur, either of which may occur from participation in the Program, Clients with certain occupations could be negatively impacted. For example, military personnel could lose a commission and persons working in the financial sector with a government clearance or in law enforcement or defense could lose a job and/or clearance. Clients in these categories will require an acceptable disclaimer prior to entry into the Program.

o.  Clients acknowledge, understand, and accept that the Law Firm does not manage, pay, or assume Client(s) debts.  The Law Firm advises, counsels, and negotiates on

HAVING READ
INITIAL HERE

# CENTERDON GROUP, INC.

Client(s) behalf provided negotiation is permissible. The Program is designed to establish savings to assist Client(s) paying off financial obligations/debts.

p.  Unless unenforceable or invalid under applicable law, the total liability including legal fees involved in defense of the Law Firm and all its affiliates under this Contract and/or relating directly or indirectly to Client's participation in the Program under any theory regarding any claim made by Client(s) whenever discovered is limited to the amount of fees paid by Client(s) to the Law Firm within the last twelve (12) months as of the date the claim is filed. This limit of liability is part of the consideration for the services provided under this Contract.

q.  If Client(s) wish to cancel and terminate the Program, they must provide notarized written notice by mail only; telephone, email, and facsimile notifications are not sufficient. The address to send such notice is: CENTERDON GROUP, INC. Termination Department, 1800 Century Park East, Suite 600, Los Angeles, CA 90067.

## 6. MONTHLY PAYMENT; LEGAL AND OTHER FEES

a.  Single Monthly Payment.  Client shall make a single recurring monthly payment of $ 1,275.00   for  24   months, except, however, there shall be a setup fee of $190 to cover out-of-pocket third party charges for a face-to-face meeting with client and program setup. Said single payment shall include a component for (1) a Legal Fee, (2) Reimbursement of Costs and Expenses, (3) a monthly maintenance fee, and (4) a Client Trust Savings Account. A description of the above components is set forth below. SINGLE MONTHLY PAYMENT is an estimate based on the assumption that debts will be resolved at 50% of the debt balance at time of resolution, that there will be no legal action, and that Client(s) fully complies with the terms and conditions of this Agreement. If the estimated monthly term above is determined to be inadequate to enable settlement of all of Client's debts, Client agrees to continue with monthly payments until such time as resolution of all accounts can be enabled.

b.  Retainer.  Client acknowledges that Law Firm has established a retainer (deposit toward legal fees) required for its services in Client's case at the rate of 20 % of the amount of debt initially enrolled, or $ 9,563.40  . Said retainer may be paid in a payment plan consisting of minimum monthly installments over the term of this Agreement specified in Section 7(a). ONE OR MORE OF CLIENT'S MINIMUM MONTHLY PAYMENTS WILL BE USED TO PAY THE RETAINER. Client(s) payments shall be applied to the retainer until 70% of the retainer has been paid, then payments shall be applied 30% to the retainer until it is paid in full; thereafter, payments are applied to Client(s)' savings account. Law Firm will bill for its services on an hourly basis with hourly rates as follows: Attorney $300, Administrator, $250, Paralegals $195, and Legal Assistants, $150. Such billings will be deducted from the Retainer and may be the same, greater, or less than the retainer. Law Firm will use all fees described in this Agreement at its sole discretion. All fees described in this Agreement are non-refundable except as indicated in paragraph 4 (d) above. Client authorizes and agrees to pay fees to Law Firm as set forth in the paragraphs 6 (a), (b), (c), (d), (e), (f), and (g). Statements for services rendered will be provided upon written request. The Law Firm does not establish a separate trust savings account for each Client, rather, all funds are held in one dedicated account. Funds held in trust for the Client remain the Client's property and may be withdrawn by Client, upon Client's written request, at any time and for any reason.  The retainer is subject to change if

HAVING READ INITIAL HERE

Client elects to add or delete any creditor accounts after Law Firm begins its representation, or the information provided by client is found to be inaccurate. Client acknowledges that legal fees are not set by law and are negotiable.

c.     Term required for settlement. Law Firm estimates the term required to settle Client's debts is that specified in paragraph 6(a).

d.     Reimbursement of Costs and Expenses. Law Firm shall be a setup fee of $190 to cover out-of-pocket third party charges for a face-to-face meeting with client visit with an associate of Law Firm and program setup.

e.     Monthly maintenance fee. Law Firm will charge $79 monthly to cover expenses of administering the program.

f.     Non-Sufficient Funds and related fees include the following: $25 if electronic funds transfers authorized by Client or check payable to Law Firm are returned unpaid; $200 for cancellation of services; $25 for any change in payment date or amount; $25 to add or delete a creditor; $25 for FedEx; $25 for credit report.

g.     Other Costs/Charges. Law Firm shall be entitled to reimbursement from Client of any third party costs or charges incurred by Law Firm as part of this representation. Law Firm shall utilize any and all means considered necessary to resolve client's debts. Any debts resolved not requiring client payment shall be subject to a separate fee of 15% of the debt amount so resolved. Providing Client fulfills the terms and conditions of this Agreement, Client shall accumulate savings to be used toward resolution of Client's debts.

7.     **PAYMENT METHOD AND TERMS**

a.     Deposits. Client agrees to make monthly deposits into Client's individual trust savings account for the purposes so specified in this Agreement. Client agrees to make equal and consecutive deposits of $ 1,275.00   on the  5  day of each month COMMENCING  6/30/2017  for approximately  24  months, except there shall be a setup fee of $190 to cover out-of-pocket third party charges for a face-to-face meeting with client and program setup. As consideration for the receipt of credit from Law Firm, Client authorizes Law Firm to collect all payments due under this Agreement via automated bank account debit, electronic check, or such other means selected by law firm. The number of months has been approximated because Law Firm cannot determine with certainty at this early stage of representation precisely the amount of funds that will be required to satisfactorily settle Client's debts included in this representation other than based on historical and industry standards. Law Firm agrees that such charges will not exceed those specified in this Agreement, unless otherwise authorized by Client. Client acknowledges and agrees that a continuation of payments and extension of the original term may be necessary to resolve all debts; if required, Client agrees to continue payments to enable resolution of all enrolled debts. Client shall make all required payments until Law Firm's representation is concluded or the Agreement is terminated. Client acknowledges that premature cancellation of this Agreement may prevent the accumulation of sufficient savings balances needed to settle client's debts, and that any refunds requested by Client are limited to amounts in Client's savings account.

HAVING READ
INITIAL HERE

225414
Marilyn Dinkins

b.  Changes to payment date(s) are permitted only if Client provides at least two business days' notice of a requested change, in writing, and if Law Firm consents. Changes in payment dates are subject to a $25 fee.

c.  Miscellaneous Terms. Client and Law Firm agree that (1) Facsimile and/or electronic signatures and copies of documents may be accepted by either party in lieu of original signatures and/or original document and such non-original signatures and documents shall have the same legal force and effect as if they were originals; (2) the entire Agreement herein supersedes all prior oral and written agreement, discussions, and negotiations; (3) this Agreement may be signed in counterparts, and when each party has delivered at least one such counterpart, such counterparts shall constitute one agreement; (4) if any provision of this Agreement shall be deemed invalid such invalidity shall not affect the other provisions, and to this extent, the provisions of this Agreement are intended to be and shall be deemed severable; (5) this Agreement can be amended only in writing signed by both Client(s) and Law Firm; (6) Client authorizes Law Firm, at its discretion, to obtain credit reports at such times and frequency as determined at the discretion of Law Firm; (7) this Agreement may be cancelled within 5 days of the date of its execution and all amounts paid refunded; thereafter, there are no refunds.

d.  Power of Attorney. Client shall, at Law Firm's request, execute a Power of Attorney and/or any and all other documents Law Firm considers necessary to enable Law Firm to resolve Client's debts. Client authorizes law firm to designate counsel of its choosing to represent Client.

e.  Assignability. At its option, CENTERDON GROUP, INC. may assign any of Client's rights, interests or obligations hereunder without Client's prior written consent.

8.  DISPUTE RESOLUTION, DAMAGES, INDEMNIFICATION

a.  Unless not permitted by applicable law, all claims or disputes against Law Firm, entities responsible for arranging face-to-face presentations and document execution, lawyers and law firms, employees, contractors, agents, or assigns and principals, successors-in-interests and assignees of any of the preceding entities (collectively and individually "Releases") arising from or relating directly or indirectly to this Agreement will be resolved by final and binding arbitration before a single arbitrator in Los Angeles, CA under California law. Should applicable law not allow arbitration in California, the venue for arbitration shall be the County in the State where Client resides when Client executed this Agreement subject to applicable law. The arbitration will be conducted by JAMS under California law. If JAMS is unable, or unwilling to act as arbitrator, or applicable law does not permit them to act, another independent arbitration organization may be selected and substituted at Law Firm's sole discretion. The result of this Section is that claims cannot be litigated in court, including some claims that could have been tried before a jury as class actions or as private attorney general actions. Client specifically waives any right to a trial by jury, or to file or participate in a class action lawsuit. Client also agrees that its claims cannot be consolidated with claims of any other person or entity for any purpose. Any claim must be submitted to

HAVING READ
INITIAL HERE
_____
_____
_____

# CENTERDON GROUP, INC.

arbitration within the earlier of twelve (12) months from the date of discovery or twelve (12) months from termination of the Agreement or will otherwise be void. Should applicable law not permit such a reduction in the period to bring a claim, then the shortest period allowable by applicable law should apply. Each party in the arbitration is responsible for their own attorney fees. The losing party is responsible for the costs of arbitration unless applicable law views such a provision as not permissible in which case Law Firm will pay the cost of arbitration excluding legal and related third party fees. Any arbitration award shall be enforceable by any court of competent jurisdiction located in Los Angeles, CA unless applicable law requires it to be enforceable elsewhere in which case it will also be enforceable in the courts in the County where Client lived when Client signed this Agreement. This Section shall survive termination of this Agreement. Likewise, to the extent Client files for Bankruptcy, this Dispute Resolution provision shall also be binding on any Bankruptcy trustee and to the extent any such Bankruptcy trustee seeks to bring any action regardless of the basis, such action must be brought in arbitration in Los Angeles, CA before JAMS under the JAMS rules and California law unless such is not permissible and the alternatives above applies. If this Section does not comply with any applicable law it will automatically be modified to comply with local law with the changes being as close to the original provision. Any disputes involving the interpretation of this Agreement shall be resolved by a Court of Competent Jurisdiction in Los Angeles, CA unless applicable law requires a different court in which case the applicable court shall so decide.

b.  Unless not enforceable or valid under applicable law, our total liability under this Agreement and/or relating directly or indirectly to Your participation in this Program under any theory regarding any claim by You whenever made or discovered are limited to the amount already paid to Us for work and products by You within the last three (3) months as of the date You file the claim. You understand that this amount does not involve any Savings, or fees paid by You to a third party. If applicable law does not allow such a cap, the amount of damages shall be limited to lowest amount allowable under the applicable law.

**UNDERSTOOD AND AGREED TO BY:**

_____    _____
Charlie Marell                 **Date**


_____    _____
Carolyn Marell                 **Date**

# CENTERDON GROUP, INC.

## CLIENT CERTIFICATION FORM

I hereby attest that the following was fulfilled:

- The debt presenter met me in person this ___day of_____, 20___.

- The debt presenter provided me with copies of the contract and the following documents: Disclosures Form and "Cooling Off" provisions (Right to Cancel) Forms

- The debt presenter provided me with a sales presentation, all of my questions have been answered and I feel that I have been adequately informed about the debt settlement program.

- I choose to sign the debt settlement contract and enrolled in the program of my own volition without any pressure or counsel from the debt presenter.


_____      _____
Charlie Marell                                          **Date**


_____      _____
Carolyn Marell                                         **Date**


**Witness/Presenter:**


_____
**Witness/Presenter Print**


_____      _____
**Witness/Presenter Signature**                        **Date**


225414
Marilyn Dinkins

# CENTERDON GROUP, INC.

## DISCLOSURE FORM

Thank you for your interest in the CENTERDON GROUP, INC. debt resolution program.

Your program will be administered by our attorneys and staff who are assigned the job of resolving your unsecured debts, such as credit cards, medical bills, and the like, for significantly less than you owe. Your program requires that you are making affordable monthly payments into your account with the law firm and, when you have enough funds built up, the law firm will make offers to resolve your debts to your creditors.

We will notify your creditors of our representation of you and instruct them to deal only with us as your attorneys, respond as appropriate to their calls and correspondence, respond to your calls and correspondence, run interference for you with your creditors, and manage your program. When enough funds are built up in your savings account, we will make settlement offers to your creditors.

Specific information concerning your fees and costs of the program, your savings account, the time required for us to make settlement offers to your creditors, and related information is contained in your Legal Service Agreement ("Agreement") which is incorporated by reference. Disclosures contained in that Agreement include your understanding and acknowledgment of the following.

1. No specific results can be predicted or guaranteed. You have confirmed you are experiencing financial hardship and have chosen debt resolution as your preferred option to resolve your debts over credit counseling, loan consolidation, or bankruptcy.

2. We have not advised you to reduce or stop payments to your creditors.

3. You will be responsible for complying with the terms and conditions of your Agreement which includes making required monthly payments to enable the buildup of sufficient savings in your account to enable us to make offers to resolve your debts to your creditors. Actual resolution amounts, necessary savings and the time varies based on your compliance with the terms of your Agreement, creditors actions and other factors that may affect or prevent the realization of your goals.

4. You understand that Law Firm begins representation upon your first program payment and prior to full payment of your retainer. Law Firm is allowing your retainer to be paid out over the coming months in installment payments. You understand that 100% of your program payments (minus the monthly maintenance fee) will go toward your retainer balance until 70% of the retainer has been collected. After which this amount will fall to 30% until the full retainer is paid in full.

5. Most creditors and collectors negotiate with law firms but a law firm cannot force creditors to accept a settlement. Your representation assumes an effort that will

225414
Marilyn Dinkins

# CENTERDON GROUP, INC.

continue for many months. Any resolution of your debt must be acceptable to both you and your settling creditor.

6. In the event you are not paying the creditors in a timely fashion, you will likely incur collection activity, including increased correspondence from the creditor or debt collector or further collection activity. Your creditors may also charge off the account, send accounts to collection agencies or attorneys, initiate lawsuits and even garnish your wages if a judgment has been obtained. A creditor may also have the right to offset your obligations against bank or other accounts maintained by that creditor in your name. Despite our representation these collection actions may continue but we will continue to negotiate these accounts. Many creditors and collectors will negotiate a payment schedule and/or debt resolution even after a lawsuit has been filed and judgments and/or garnishments have been obtained.

7. If you do not make required minimum payments to your creditors you may be breaking the terms of your agreements with them causing an adverse effect and decline in your credit score, increased interest rates, late payment fees, over-limit fees, and penalties. After resolution of your debts your creditors may comment that the account was "settled for less than the full amount" on your credit report.

8. If a consumer resolves a debt with a creditor for less than the full amount of the debt resulting in savings in excess of $600, the consumer may have to pay income taxes on the amount the debt was reduced.

9. Debt resolution can be very effective way to resolve your debt, but it is not a painless process and no guarantees can be given because the process is subject to factors that neither you nor your debt resolution company may be able to control. As with any type of debt repayment plan, failure to effect resolutions of your debt is likely to have negative consequences on your financial situation.

10. Federal and State law require a "Cooling Off" period which allows a client to cancel a contract within 3 business days of signing. A consumer should not sign a contract unless the following provision is set forth in the contract:

**I have read and understand the above Disclosures.**


---
Charlie Marell      **Date** _____


---
Carolyn Marell      **Date** _____

225414
Marilyn Dinkins

CENTERDON GROUP, INC. V1

# CENTERDON GROUP, INC.

## CANCELLATION FORM

### Notice of Rescission

You may rescind this agreement without penalty or obligation at any time before midnight of the 3rd day which begins after the date the agreement is signed by you. To rescind this agreement, mail a signed, dated copy of the rescission notice, or any other written notice to CENTERDON GROUP, INC., 1800 Century Park East, Suite 600, Los Angeles, CA 90067 before midnight on the third business day after the day you sign the agreement, which states "I hereby rescind this transaction" and include the [date] and [signature].

### Cancellation Effect

As a result of my action in terminating from CENTERDON GROUP, INC. debt resolution program:

1) All rights and responsibilities entailed under the provisions of my signed Power of Attorney authorizations to CENTERDON GROUP, INC. are now and forevermore revoked.

2) All of my creditors are released from their obligation to abide by the Cease and Desist letter that were prepared on my behalf by CENTERDON GROUP, INC. and that their pursuit of me for debt collection purposes is acceptable to me.

3) I will no longer forward creditor correspondence or have forwarded creditor correspondence to CENTERDON GROUP, INC. Any creditor correspondence lost or otherwise unaccounted for after the date of my cancellation will not be the responsibility of CENTERDON GROUP, INC.

4) CENTERDON GROUP, INC. has my consent and authorization to notify each and all of my creditors of my cancellation action.

I hereby acknowledge by my signature below that I have read and understand the Cancellation Form and I am rescinding this agreement.

_____     _____
Charlie Marell                                      **Date**

_____     _____
Carolyn Marell                                      **Date**

**STATE OF:** _____     **COUNTY OF:** _____

**SUBSCRIBED AND SWORN TO BEFORE ME**, a Notary Public within and for the aforesaid County and State, this _____ day of _____, 20_____.

My commission expires: _____

**Notary Public**                                            **Seal**

225414
Marilyn Dinkins

CENTERDON GROUP, INC. V1